UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELDON MCDONALD,

    Petitioner,

v.

LLOYD RAPELJE,

    Respondent.

_____/

Case No. 4:12-13228
HONORABLE TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY; AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

Sheldon McDonald, ("petitioner"), confined at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, petitioner challenges his conviction for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), first-degree child abuse, Mich. Comp. Laws § 750.136b(2); obstruction of justice, Mich. Comp. Laws § 750.505, and being a second felony habitual offender, Mich. Comp. Laws § 769.10. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

### I. FACTUAL BACKGROUND

Petitioner was convicted of the above offenses and also of a separate charge of second-degree murder following a jury trial in the Kalkaska County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from

the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F. 3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arose from the death of three-year-old Cody Cross. Defendant had been involved in a romantic relationship with Cody's mother, Pamela Buning, and the three lived together at Buning's apartment. Defendant became involved in disciplining Cody and eventually began administering hard spankings on a daily basis, often multiple times a day.
>
> On August 1, 2008, defendant had been left alone with Cody while Buning was at work. When Buning returned home, Cody was unresponsive, and defendant did not provide a reason for Cody's condition. Several hours later, Cody's condition had not improved and an ambulance was summoned. Defendant, Buning, and Heather Batchelor, a friend who had been at the apartment earlier in the day, concocted a story that Cody had been left with a babysitter who disappeared after reporting that Cody had fallen down the stairs.
>
> Upon being admitted at the local hospital, Cody's treating physicians evaluated Cody's condition as critical. Cody was taken to another hospital with a children's trauma center. Tests revealed that Cody had severe brain swelling. In addition, he was suffering from numerous severe bruises all over his body, which resulted in renal failure. Cody also had multiple rib fractures in varying stages of healing, which indicated that the fractures resulted from separate injuries. Surgery to alleviate the pressure in Cody's brain was unsuccessful. Doctors informed Cody's family that there was no hope of further recuperation, and he was taken off of life support. An autopsy followed and concluded the cause of death was from swelling of the brain. The forensic pathologist determined the numerous injuries were assaultive and ruled Cody's death a homicide.

*People v. McDonald,* No. 293015, * 1-2 (Mich.Ct.App. October 26, 2010).

The Michigan Court of Appeals affirmed petitioner's convictions for first-degree felony murder, first-degree child abuse, and obstruction of justice, but vacated petitioner's second-degree murder conviction on Double Jeopardy grounds.

*Id.* The Michigan Supreme Court subsequently denied petitioner leave to appeal.

*People v. McDonald,* 489 Mich. 898; 796 N.W.2d 80 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. WAS PETITIONER DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL BY HIS ATTORNEY'S FAILURE TO REQUEST A JURY INSTRUCTION THAT DEFENDANT COULD ONLY BE CONVICTED OF FELONY MURDER IF HE KNOWINGLY OR INTENTIONALLY CAUSED THE VICTIM SERIOUS PHYSICAL OR MENTAL HARM WHEN HE INFLICTED BLUNT FORCE TRAUMA TO HIS HEAD?

II. DID THE SENTENCING COURT VIOLATE PETITIONER'S RIGHT TO BE FREE FROM DOUBLE JEOPARDY BY ENTERING JUDGMENTS OF CONVICTION AND SENTENCE FOR MURDER IN THE SECOND DEGREE WHERE A JUDGMENT AND SENTENCE WAS ALSO ENTERED FOR MURDER IN THE FIRST DEGREE?

III. WAS DEFENDANT DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL BY HIS ATTORNEY'S FAILURE TO OBJECT TO A JURY INSTRUCTION THAT IT MAY CONSIDER THE PRIOR INCONSISTENT STATEMENTS OF A WITNESS "IN DETERMINING THE FACTS OF THE CASE"?

## II. LEGAL STANDARD

28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings, 'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was

4

unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,*

131 S. Ct. at 786-87.  Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III.  ANALYSIS

**A.  Claims # 1 and # 3.  The ineffective assistance of counsel claims.**

The Court discusses petitioner's first and third claims together because both allege the ineffective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F. 3d

6

372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792)). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough*, 541 U.S.at 664)). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard

7

itself." *Harrington,* 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard:

> "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

*Harrington v. Richter,* 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Id.* at 789.

In his first claim, petitioner argues that his trial counsel was ineffective for failing to request a jury instruction which would have informed the jurors that petitioner could only be convicted of first-degree felony murder if he knowingly and intentionally caused the victim serious physical or mental harm when he inflicted blunt force trauma to the victim's head.

The Michigan Court of Appeals rejected petitioner's claim. The Michigan Court of Appeals noted that the trial judge instructed the jurors on the elements of first-degree felony murder and specifically advised them that the prosecution had to prove "that the defendant caused the death of Cody Cross; that is, that Cody Cross died *as a result of injuries resulting from blunt-force trauma to his head.*" *McDonald,* Slip. Op. at 3 (emphasis original). The felony murder instruction also informed the jurors that the third element of first-degree felony murder was that

8

when petitioner did *the act that caused the death* of the victim, petitioner was committing the crime of first-degree child abuse. *Id.* (emphasis original). The Michigan Court of Appeals indicated that the judge also instructed the jurors on the elements of first-degree child abuse. *Id.* After noting that jury instructions "must be read as a whole rather than extracted piecemeal" in order to establish error," *Id.,* the Michigan Court of Appeals rejected petitioner's claim:

> When the challenged instruction is read in its entirety, it is plain that the jury was instructed that to convict defendant of felony murder, it was required to find that he caused Cody's death by inflicting a head injury, while engaged in an act that constituted first-degree child abuse, and with the requisite intent. We cannot find any support for defendant's contention that the instruction opened the door for the jury to convict him of felony murder based on some other act that constituted first-degree child abuse. The instruction specifically identified Cody's cause of death as "blunt-force trauma to [the] head" and stated that a required element of the crime was that defendant caused the death while engaged in an act of first-degree child abuse. It logically follows that the jury had to find that defendant caused the head injury in order to convict him. Because the challenged jury instruction adequately reflected the law and protected defendant's rights, defense counsel cannot be deemed ineffective for failing to object.

*McDonald,* Slip. Op. at 3-4 (internal citation omitted).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (*i.e.*, malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

A person is guilty of first-degree child abuse if he or she knowingly or intentionally causes serious physical or mental harm to a child. *See People v. Maynor,* 470 Mich. 289, 295; 683 N.W. 2d 565 (2004)(citing Mich. Comp. Laws § 750.136b(2)). Physical harm is defined under Michigan's child abuse statute as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." Mich. Comp. Laws § 750.136b(1)(f).

The jury instructions, when viewed in their entirety, adequately informed the jury that in order to convict petitioner of first-degree felony murder, the jurors were required to find that he caused the victim's death by inflicting a head injury while engaged in an act that constituted first-degree child abuse and with the intent required for felony murder. The instruction specifically indicated that the victim's cause of death was blunt force trauma to the head and that a specific element of felony murder was that the death was caused while petitioner was engaged in an act of first-degree child abuse. Trial counsel is not ineffective for failing to object to jury instructions that are correct. *See Campbell v. Coyle,* 260 F. 3d 531, 557 (6th Cir. 2001). Because the instructions as given on the issues of causation and intent for first-degree felony murder were adequate, counsel's failure to object was not objectively unreasonable, and petitioner cannot show that a different instruction would likely have changed the outcome of his trial so as to

10

entitle him to habeas relief on his claim. *See Jacobs v. Sherman,* 301 Fed. Appx. 463, 466-67 (6th Cir. 2008).

In his third claim, petitioner argues that his trial counsel was ineffective for failing to object to a jury instruction that permitted the jurors to use prior inconsistent statements of a witness as substantive evidence, rather than merely for impeachment. Petitioner specifically argues that the instruction was erroneous because it permitted the jurors to use prior statements made by Heather Batchelor for substantive evidence of his guilt, rather than merely to impeach her credibility. In particular, petitioner points to a statement made by Batchelor to the police, in which she claimed that Pam Buning had informed her that when doctors at the hospital examined the victim, they discovered that his rectum had been torn.

Petitioner is not entitled to relief on his claim for several reasons. First, as the Michigan Court of Appeals noted in rejecting the claim, *See McDonald,* Slip. Op. at 4, Batchelor's taped statements were played at petitioner's insistence and against his counsel's advice. (See also Tr. 6/10/09, pp. 143-45). Because petitioner requested over his counsel's advice that these inconsistent statements be played for the jury, he cannot complain that counsel was ineffective with regards to any damage that may have come from playing these statements to the jury. *See Sims v. State*, 602 So. 2d 1253, 1257-58 (Fla.1992)("[W]e do not believe counsel can be considered ineffective for honoring the client's wishes.").

The Michigan Court of Appeals further concluded that Batchelor's taped statements were admissible as substantive evidence under M.R.E. 801(d)(2)(E) on

11

the issue of whether petitioner conspired with Batchelor and Buning to fabricate a story concerning the source of the victim's injuries. *McDonald,* Slip. Op. at 4. Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that it was proper under Michigan law to use Ms. Batchelor's prior inconsistent statements as substantive evidence, this Court must defer to that determination in resolving, and in rejecting, petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 Fed. Appx. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003).

The Michigan Court of Appeals finally concluded that petitioner was not prejudiced by Batchelor's statements, because she was simply repeating what someone else had told her. More importantly, the medical examiner testified that there was no evidence of sexual abuse. *McDonald,* Slip. Op. at 4.

Petitioner is unable to show that he was prejudiced by counsel's failure to seek a limiting instruction on the use of Batchelor's prior inconsistent statement. Even on direct appeal of federal convictions, the Sixth Circuit has found a trial court's failure to instruct a jury on the limitation on the use of prior inconsistent statements plainly erroneous "specifically only where 'the testimony brought out during the impeachment process established in large measure the substantive elements of the crime which the government was required to prove.'" *U.S. v.*

12

*Hernandez*, 227 F. 3d 686, 697 (6th Cir. 2000)(quoting *United States v. Lipscomb*, 425 F. 2d 226, 227 (6th Cir. 1970)). In the present case, there is no indication that Batchelor's prior inconsistent statement to the police that she had been told that the victim's rectum had been torn was used to establish the substantive elements of the crimes for which petitioner was convicted. Because there is no indication that the prosecutor used Batchelor's prior inconsistent statement as substantive evidence, the Michigan Court of Appeals' rejection of petitioner's ineffective assistance claim, arising from trial counsel's failure to proffer a limiting instruction on the proper use of prior inconsistent statements, was not an unreasonable application of *Strickland. See Cyars v. Hofbauer,* 383 F. 3d 485, 491-93 (6th Cir. 2004). Petitioner is not entitled to relief on his third claim.

**B. Claim # 2. The Double Jeopardy Claim.**

Petitioner next claims that his right to protection against being placed in Double Jeopardy was violated when he was convicted of one count of first-degree felony murder and one count of second-degree murder with respect to the single victim in this case.

The Michigan Court of Appeals agreed that petitioner could not be convicted of one count of first-degree felony murder and one count of second-degree murder with respect to the victim. The Michigan Court of Appeals vacated the second-degree murder conviction and remanded the matter to the trial court to correct the judgment to reflect a total of one first-degree murder conviction. *McDonald,* Slip. Op. at 4-5.

Petitioner's Double Jeopardy claim that he was improperly convicted of one count of first-degree felony murder and one count of second-degree murder with respect to a single victim has been mooted by virtue of the fact that the Michigan Court of Appeals ordered that second-degree murder conviction be vacated. *See Harris v. Metrish,* No. 04-CV-73323-DT; 2006 WL 1313804, at 6 (E.D. Mich. May 12, 2006)(citing *Nichols v. Moore,* 923 F. Supp. 420, 423-24 (W.D.N.Y. 1996). Petitioner's Double Jeopardy claim is meritless, because petitioner received all the relief to which he was entitled for this error when the Michigan Court of Appeals vacated the second-degree murder conviction. *See Tiggart v. Robinson*, 36 Fed. Appx. 750, 751 (6th Cir. 2002). Petitioner's Double Jeopardy Claim is now moot.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court

14

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d at 880.  The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d at 798.

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis*.

Dated:  September 12, 2014           s/Terrence G. Berg
                                     TERRENCE G. BERG
                                     UNITED STATES DISTRICT JUDGE


### Certificate of Service

I hereby certify that this Order was served on parties of record on September 12, 2014 using the CM/ECF system, and/or by postal mail.

                                     s/A. Chubb
                                     Case Manager